IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVID ALFRED KELSEY**,

        Plaintiff,

v.

**BRAD CAIN,** *et al.*,

        Defendants.

Case No. 2:18-cv-1021-SI

**OPINION AND ORDER**

David Alfred Kelsey. Plaintiff *pro se*.

Ellen F. Rosenblum, Attorney General, and Andrew Hallman, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      Plaintiff David Kelsey is an inmate in the custody of the Oregon Department of Corrections ("ODOC") incarcerated at the Snake River Correctional Institution ("SRCI"). Defendant Brad Cain is the Superintendent of SRCI. Defendants Dr. Garth Gulick and Dr. Bryon Hemphill are medical doctors employed by ODOC to work at SRCI. Plaintiff filed this *pro se* lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's constitutional rights under the Eighth Amendment's Cruel and Unusual Punishment Clause by failing to provide him

with adequate medical care.[1] Specifically, Plaintiff alleges that Dr. Gulick improperly denied Plaintiff's initial request for hernia surgery. Plaintiff also contends that Dr. Hemphill treated Plaintiff's abdominal and hernia pain by merely giving him antacid. Plaintiff further claims that his treatment by both doctors led to Plaintiff's initially-scheduled hernia surgery being canceled and not promptly rescheduled. Finally, Plaintiff bases his claim against Mr. Cain solely on his role as Superintendent of SRCI.

Defendants have moved for summary judgment. They argue that Drs. Gulick and Hemphill were not deliberately indifferent to Plaintiff's medical needs and, further, are entitled to qualified immunity. Defendants also assert that Plaintiff's claim against Superintendent Cain fails because no reasonable juror could find that Mr. Cain was personally involved in the incidents that allegedly denied Plaintiff's constitutional rights. For reasons stated below, Defendants' motion for summary judgment (ECF 41) is GRANTED.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

---

[1] The Eighth Amendment's Cruel and Unusual Punishment Clause applies to the states by operation of the Fourteenth Amendment.

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Plaintiff is proceeding *pro se* in this action. Consequently, the court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions of pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987)). The Court also must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## BACKGROUND

Plaintiff alleges that his medical treatment at SRCI violated his constitutional rights under the Eighth Amendment to be free of cruel and unusual punishment. On July 20, 2015, Plaintiff first reported pain from a ventral hernia[2] to Dr. Gulick and requested surgery. Dr. Gulick forwarded Plaintiff's surgery request to the Therapeutic Level of Care Committee ("TLCC") of ODOC. ECF 42 at 3, ¶ 10. Two days later, the TLCC denied Plaintiff's request for surgery, recommending instead that SRCI medical personnel "follow as morbid obesity & reconsider if sg[significant] wt [weight] loss." *Id.* at 68. Instead of surgery, Plaintiff was prescribed

---

[2] A ventral hernia is "a bulge of tissues through an opening of weakness within the abdominal wall muscles." ECF 42 at 3, ¶ 9.

"ranitidine, a type of antacid and antihistamine, salsate, a nonsteroidal anti-inflammatory drug, and pantoprazole, a proton pump inhibitor, to help with his abdomen pain and esophagus issues." *Id*. at 3, ¶ 12. Plaintiff, however, alleges that Dr. Gulick told Plaintiff that the TLCC denied Plaintiff's surgery because it was "too expensive." ECF 47 at 2.

Three months later, Plaintiff sent a health service request, alerting medical staff of his abdominal pain continuing "for a long time," and complaining that the antacid was not "working anymore." ECF 42 at 73. The following day, SRCI notified Plaintiff that he was scheduled to see an ODOC Health Services provider to address his abdominal pain. *Id*. at 3, ¶ 14. At Plaintiff's December 28, 2015 appointment, Dr. Hemphill recommended an endoscopy. *Id*. at 3, ¶¶ 15-16. An endoscopy is a nonsurgical procedure to examine a person's esophagus, stomach, and upper part of the small intestine. *See, e.g.*, https://www.mayoclinic.org/tests-procedures/endoscopy/about/pac-20395197.

On January 26, 2016, Dr. Hemphill gave Plaintiff an antacid for his abdominal and hernia pain, even though Dr. Hemphill knew "about [Plaintiff's] repeated complaints about abdominal pain that had continued for some time." ECF 47 at 2. During this visit, Dr. Hemphill and Plaintiff discussed Plaintiff's endoscopy approval, proper eating habits, and nutrition. ECF 42 at 4, ¶ 17.

A medical provider outside the ODOC, Dr. John Phillips, conducted Plaintiff's endoscopy on February 23, 2016. *Id*. at 4, ¶ 18. After the procedure, Dr. Phillips noted that "the esophagus was somewhat tortuous," with a "slight hiatal hernia," and that Plaintiff "possibly had a blood clot, which was not removed." *Id*. at 57-58. As a result, Dr. Phillips proposed protein pump inhibitors, a class of medication. *Id*. at 58.

About ten months later, Plaintiff submitted another health service request that complained of abdominal pain, noting that his medications were no longer working, observing that "his

stomck [*sic*] and bowls [*sic*] are out further now," and stating that this was an ongoing problem for the past two years. *Id*. at 72. Two days later, Plaintiff visited the sick call nurse, felt pain upon palpitation, and reported a change in his comfort levels. *Id*. at 21. This visit prompted the TLCC to approve Plaintiff for a surgery consultation. *Id*. at 62.

During Plaintiff's surgery consult on April 14, 2017, Dr. Dwaine Tesnohlidek, an outside healthcare provider, noted that Plaintiff had a "large ventral incisional hernia" that "needs repair," and provided his recommendations for pre-operation. *Id*. at 61. On May 26, 2017, Plaintiff had another consult for his abdominal pain with Dr. Robert Korn at St. Luke's Clinic Bariatrics and General Surgery-Boise. *Id*. at 64-65.

On July 19, 2017, Plaintiff sent an inmate communication form to SRCI staff, expressing growing impatience and anticipating surgery. *Id*. at 70. Plaintiff stated that he had been in pain for three years, his hernia increased in size every day, he was uninformed about the pre-operation logistics, he felt like he was "being slow played," and he "needs to get a lawyer." *Id*. Dr. Hemphill responded, stating that "[he] agree[d] it seems like a long time" and that he had no idea why it takes this long to get a hernia surgery. *Id*.

On September 11, 2017, Dr. Korn examined Plaintiff before Plaintiff's anticipated hernia repair surgery. Dr. Korn found that Plaintiff "had incarcerated fat and bowel located immediately below the line joining the two rectus muscles with a deficit of several centimeters between the rectus sheaths." *Id*. at 55-56.

On September 21, 2017, Plaintiff submitted another inmate communication form, following up with SRCI. Plaintiff stated that he was told to stop taking his medications on August 14, 2017 and September 13, 2017. *Id*. He also declared, "between my back and shoulder pain, my pain level is through the roof." *Id.* An SRCI health staff member responded, "I'm sorry

it has taken longer than expected. It has been outside of our control. Please be patient [and] you will be seen soon." *Id*.

On September 26, 2017, Plaintiff was admitted to the hospital for hernia repair surgery. *Id*. at 6, ¶ 32. The following morning, however, Dr. Korn's office called SRCI to cancel Plaintiff's surgery due to an unrelated emergency. *Id*. at 6, ¶ 33; *id.* at 18.

On December 6, 2017, Dr. Korn finally performed Plaintiff's first hernia surgery. *Id*. at 49. Dr. Korn reported no complications in the surgery. Plaintiff returned to SRCI two days later, and Plaintiff's pain was moderately controlled with medication. *Id.* at 49-50. Dr. Korn affixed a "wound vac" to the wound, which uses a vacuum dressing to promote healing and wound closing. *Id*. at 7, ¶ 37. The following week, Plaintiff met with Dr. Korn. *Id*. at 48. At this appointment, Dr. Korn noticed a "lump" on Plaintiff's stomach but denied Plaintiff's request for pain management. ECF 23 at 2.

On December 21, 2017, Plaintiff had a follow-up appointment, during which an outside physician's assistant reported that Plaintiff's incisions were clean, dry, and intact without erythema, swelling, or drainage. ECF 42 at 45. The physician's assistant removed half of Plaintiff's staples from the surgical site, applied steri-strips, and recommended that Plaintiff's remaining staples be removed in a week. *Id*. at 45-46. Plaintiff contends that SRCI only removed the remaining staples after Plaintiff sent "kytes to health services." ECF 15 at 29. There is no evidence, however, of these kytes in the record. Moreover, Plaintiff's remaining staples were removed in nine days.

SRCI medical staff removed Plaintiff's remaining staples on December 30, 2017, and noted that Plaintiff's surgical site was "starting to get red and inflamed." ECF 42 at 16. On January 3, 2018, Dr. Ashley Clements noted that Plaintiff had "mild erythema/dry where the

staples were." *Id*. at 15. From January 5–13, 2018, SRCI medical personnel provided Plaintiff with "light medical treatment." *Id*.

On January 19, 2018, at 2:50 a.m., medical personnel brought Plaintiff to the infirmary on a gurney. *Id.* Plaintiff alerted nurses that he had migraines and chills during the past three days, but he merely thought he was getting sick. *Id*. SRCI health staff observed that Plaintiff had developed a one-inch opening to his abdomen with yellow fluid flowing out upon each expiration. *Id.*; ECF 15 at 30. SRCI health staff cleaned his wound and called an ambulance. ECF 42 at 15. Several hours later, Plaintiff had emergency surgery at an outside facility for an "abdominal wall abscess due to a staphylococcus aureus." *Id*. at 34-35. This wound infection required "irrigation and debridement of abdominal wound vac." *Id*. at 26. Plaintiff spent 18 days in the hospital and received acute surgical care to prevent his abdominal organs from protruding out of his separated wound. *Id*. at 42. In his follow-up appointment, Dr. Gulick advised Plaintiff to continue routine wound care. *Id*. at 9, ¶ 48.

Plaintiff submitted two grievances after his emergency surgery. Plaintiff's first grievance, submitted on February 26, 2018, claimed that "it took so long to do surgery that they had to do [a] muscle transplant from both sides to fix [Plaintiff's] stomach hernias"; that his "stomach popped open with infection"; that his softball sized wound was used as a "teaching tool" for the nurses; that he had to "beg" for drugs when his dressing was changed given how much pain he was in; that his hernias went from "silver dollar" size in 2015 to growing to "softball" size "by the time [Plaintiff] had surgery"; and that he spent "18 days in the hospital after [his] emergency surgery and three days in the ICU." ECF 15 at 28-31. Plaintiff's grievance was denied on March 5, 2018 because it "failed to comply with ODOC rules." *Id*. at 3, ¶ 14. In Plaintiff's second grievance he asked for more medication to keep him out of pain, provided updated

information on his medical condition, and requested that Dr. Gulick help manage his pain. ECF 15 at 34. Plaintiff stated that "this is not the first time I've been left in pain by Dr. Gulick." *Id.* Ultimately, the nurse manager denied Plaintiff's grievance on June 6, 2018, stating that "[a]lthough you might disagree with your medical care plan, it is noted that the medical care you are being provided is medically sound." *Id*. at 33.

Plaintiff wore a wound vac for more than 140 days. ECF 42 at 9, ¶ 51. After the wound vac was removed, Plaintiff's wound had a "noticeable" odor. *Id*. at 11. Dr. Gulick reported that "the bulge was initially a half dollar size but had since grown significantly" and it was in a different location than Plaintiff's other hernia on his right abdomen. *Id*. at 9, ¶ 51.

About two months later, on August 21, 2018, Plaintiff had a new 16-centimeter incisional hernia, and Dr. Clements recommended surgery to TLCC. *Id*. at 9, ¶ 52. TLCC approved Plaintiff's surgery the next day and referred Plaintiff to Oregon Health and Science University for hernia incisional repair on August 27, 2018. *Id*. at 27.

Plaintiff argues that Dr. Gulick's denying Plaintiff's initial hernia surgery request in 2015, and Dr. Hemphill's prescribing Plaintiff antacid in January 2016 constitutes deliberate indifference to Plaintiff's serious medical needs. Plaintiff also argues that his poor treatment by Drs. Gulick and Hemphill led to the cancelation of Plaintiff's hernia surgery scheduled for September 26, 2017, and that these doctors failed to ensure that the surgery was promptly rescheduled. Plaintiff alleges that because of the delay in receiving his initial hernia surgery on December 6, 2017, his surgery was more complicated, he suffered infections, and he developed a wound that will not fully heal. Plaintiff seeks $4 million in damages.

## DISCUSSION

Defendants argue that Drs. Gulick and Hemphill were not deliberately indifferent to Plaintiff's serious medical needs and thus did not violate Plaintiff's rights under the Eighth

PAGE 8 – OPINION AND ORDER

Amendment. Defendants also argue Drs. Gulick and Hemphill are entitled to qualified immunity. Defendants further argue that Plaintiff's claim against Superintendent Cain fails because no reasonable juror could find that Mr. Cain was personally involved in any of the actions that allegedly denied Plaintiff's constitutional rights. Finally, Defendants raise two procedural arguments: (1) that Plaintiff's 2015 and 2016 claims are time-barred by the applicable two-year statute of limitations; and (2) that Plaintiff failed to exhaust his administrative remedies in 2015 and 2016 as required by the Prison Litigation Reform Act ("PLRA").[3] The Court finds that there is no genuine issue of material fact and that Dr. Gulick, Dr. Hemphill, and Superintendent Cain did not violate Plaintiff's rights under the Eighth Amendment. Because the Court grants summary judgment to Defendants on these grounds, the Court declines to reach Defendants' remaining arguments.

### A. Applicable Legal Standards

The Eighth Amendment prohibits "cruel and unusual punishments," and, therefore, "places restraints on prison officials." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). It also places duties upon prison officials to provide humane conditions of confinement, including, "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (quotations and citation omitted).

The government has an obligation "to provide medical care to those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In this context, however, "[m]edical malpractice does not become a constitutional violation merely because the victim is a

---

[3] The Court previously denied Defendant's motion for summary judgment in which Defendants argued that Plaintiff failed to exhaust his administrative remedies under the PLRA. The Court found that there was an issue of fact about whether administrative remedies were reasonably available to Plaintiff after his hernia repair surgery on September 27, 2017, and his emergency hernia repair surgery on January 19, 2018. ECF 26 at 5.

prisoner." *Id.* at 106. In order to state a claim relating to medical care under § 1983, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Allegations that a medical professional was negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.*

To establish an Eighth Amendment violation under § 1983, a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). A serious medical need is the kind of injury that "a reasonable doctor or patient would find important and worthy of comment or treatment; . . . that significantly affects an individual's daily activities; or [causes] chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

Second, Plaintiff must show that the prison officials "acted with deliberate indifference" in denying medical care. *Toguchi*, 391 F.3d at 1057 (citation and quotation marks omitted). Under this standard, for example, a medical decision declining to order an x-ray ordinarily does not represent cruel and unusual punishment but is a matter for medical judgment. *Estelle*, 429 U.S. at 107. Deliberate indifference may be shown "when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett,* 439 F.3d at 1096 (citation and quotation marks omitted). A "claimant need not show that a prison official acted or failed to act believing that harm

actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Therefore, a defendant is liable if he knows that a plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

## B. Deliberate Indifference

Plaintiff argues that the following actions are sufficient to raise a genuine issue for trial on the question of deliberate indifference: (1) Dr. Gulick's denying Plaintiff's hernia surgery request; (2) Dr. Hemphill's giving Plaintiff only antacid for his abdominal and hernia pain; and (3) the cancelling of Plaintiff's initially-scheduled hernia surgery and Defendants' failing to ensure that it was promptly rescheduled. Plaintiff's medical needs are serious. In his inmate communication forms, health service requests, and inmate grievances, Plaintiff informed SRCI that he was in substantial pain. In addition, several SRCI medical professionals treated Plaintiff from 2015 to 2018 for his substantial hernia pain. Also, a hernia is a serious medical condition because failure to treat a hernia could cause further significant injuries. The Court, however, must consider whether the acts allegedly committed by each doctor rise to the level of an Eighth Amendment violation, which requires evidence beyond mere medical negligence or professional malpractice.

### 1. Dr. Gulick

Plaintiff argues that Dr. Gulick violated Plaintiff's Eighth Amendment rights by denying Plaintiff's initial hernia surgery request in 2015. Plaintiff, however, presented no evidence that Dr. Gulick played any role in denying Plaintiff's initial surgery request in 2015. Plaintiff's claim against Dr. Gulick is misplaced because he did not "deny, delay, or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096. Instead, Dr. Gulick facilitated Plaintiff's continued medical treatment by sending Plaintiff's surgery request to TLCC for further review.

Indeed, the record shows that TLCC, and not Dr. Gulick, was responsible for denying Plaintiff's initial surgery request on July 22, 2015. TLCC denied Plaintiff's surgery request because his weight presented a risk in this surgery; TLCC, however, also noted it would reconsider its decision if there were significant weight loss. Dr. Gulick therefore was not deliberately indifferent to Plaintiff's medical needs because Dr. Gulick did not deny Plaintiff's surgery request, but instead forwarded it to TLCC for further review. Moreover, even if Dr. Gulick had played a role in denying Plaintiff's initial hernia surgery, the Ninth Circuit has held that refusing to approve an inmate's surgery for an umbilical hernia does not violate the Eighth Amendment when the denial is based on legitimate medical opinions. *See Hamby v. Hammond,* 821 F.3d 1085, 1093 (9th Cir. 2016).

Liberally construing Plaintiff's filings, Plaintiff also argues that Drs. Gulick and Hemphill were deliberately indifferent towards Plaintiff's serious medical needs because Plaintiff's initial hernia repair surgery on September 27, 2017 was cancelled and was not promptly rescheduled. Plaintiff, however, provides no evidence that either Dr. Gulick or Dr. Hemphill were personally involved in the decision to cancel Plaintiff's initial hernia surgery. Plaintiff's initial hernia surgery was scheduled outside of SRCI. Further, there is no evidence that either Dr. Gulick or Dr. Hemphill had any influence or effect on scheduling matters outside the prison or with regard to the doctor performing the surgery. Additionally, the only evidence in the record is that Dr. Korn, the surgeon, canceled Plaintiff's surgery because of an emergency. Plaintiff's surgery was rescheduled for approximately than 10 weeks later, on December 6, 2017. This is not an unreasonable delay. Nor is there evidence to support that Drs. Gulick or Hemphill had any influence or effect on the rescheduling of Plaintiff's surgery with Dr. Korn.

PAGE 12 – OPINION AND ORDER

Accordingly, the cancellation and rescheduling of Plaintiff's surgery do not show a genuine issue for trial of an Eighth Amendment claim against either doctor.

### 2. Dr. Hemphill

Plaintiff also argues that Dr. Hemphill violated Plaintiff's Eighth Amendment rights in treating Plaintiff with an antacid for his abdominal and hernia pain on January 26, 2016. Plaintiff argues this treatment was constitutionally-deficit because Dr. Hemphill knew Plaintiff had a hernia. Defendants argue that Dr. Hemphill's decision to give Plaintiff an antacid in 2016 was merely a difference of medical opinion between Dr. Hemphill and Plaintiff, which does not amount to deliberate indifference. Defendants also note that Dr. Hemphill ordered an endoscopy for Plaintiff in December 2015 to examine Plaintiff's digestive tract before giving Plaintiff an antacid. The parties therefore simply disagree about whether Dr. Hemphill provided "medically acceptable" treatment under the circumstances.

"Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi*, 391 F.3d at 1060. "Eighth Amendment doctrine makes clear that '[a] difference of opinion between a physician and the prisoner—or between medical professionals— concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby,* 821 F.3d at 1092 (citing *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014)). Instead, "[t]o show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Id.* (quoting *Snow*, 681 F.3d at 988).

Plaintiff argues that Dr. Hemphill was deliberately indifferent to Plaintiff's serious medical need because Dr. Hemphill gave Plaintiff nothing more than an antacid for indigestion even though Plaintiff had a hernia for a year. Specifically, Plaintiff asserts that the idea that indigestion was the source of his pain was "absurd" and that any medical professional would know and would investigate further. At best, Plaintiff's argument raises concerns of medical malpractice and emphasizes a difference in opinion between Plaintiff and Dr. Hemphill, which does not amount to deliberate indifference. *Hamby,* 821 F.3d at 1092-93 (holding that a prison medical personnel's decision to deny hernia surgery was based on "legitimate medical opinions that have often been held reasonable under the Eighth Amendment" and was only a difference in opinion from the prisoner's view that non-surgical treatment was constitutionally inadequate).

Viewing the evidence in the light most favorable to Plaintiff, it was not "beyond debate" that Dr. Hemphill pursued a medically unreasonable course of treatment by giving Plaintiff an antacid to treat pain potentially resulting from something in the digestive tract and ordering an endoscopy. *See id.* at 1092. Plaintiff did not present any evidence to refute Dr. Gulick's declaration that Dr. Hemphill "took all necessary steps to ensure Kelsey's medical treatment was within the standard of care." ECF 42 at 10, ¶ 55. Nor did Plaintiff present any evidence showing that Dr. Hemphill's course of treatment was "medically unacceptable under the circumstances." *Hamby,* 821 F.3d at 1092. Further, Plaintiff did not provide any evidence that Dr. Hemphill treated Plaintiff with antacid and ordered an endoscopy "in conscious disregard of an excessive risk to the plaintiff's health." *Hamby,* 821 F.3d at 1092. Indeed, by ordering the endoscopy the month before Dr. Hemphill gave Plaintiff the antacid, Dr. Hemphill was directly responding to Plaintiff's complaints. In addition, along with giving Plaintiff an antacid in January 2016, Dr. Hemphill advised Plaintiff on proper eating habits and nutrition to improve Plaintiff's health.

Thus, Dr. Hemphill was not deliberately indifferent to Plaintiff's serious medical needs because he actively sought further to investigate the source of Plaintiff's pain in ordering an endoscopy in December 2015, gave Plaintiff an antacid to soothe his pain, and advised Plaintiff on nutritional habits to improve Plaintiff's health.

**C. Supervisory Liability**

"Liability under § 1983 arises only upon a showing of personal participation by the defendant . . . There is no *respondeat superior* liability under § 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Ninth Circuit has explained that a defendant may be held liable as a supervisor under § 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff contends that Superintendent Brad Cain oversaw all operations at SRCI and thus is vicariously liable for SRCI medical personnel's actions in depriving Plaintiff of his right to be free from cruel and unusual punishment. Mr. Cain argues that he is not liable for any SRCI medical personnel's actions because there is no evidence that he was personally involved in any deprivation of Plaintiff's Eighth Amendment rights. The Court agrees with Mr. Cain. The fact that Mr. Cain was a supervisor, by itself, does not render him vicariously liable under § 1983. *Taylor*, 880 F.2d at 1045. Plaintiff does not provide any evidence that shows that Mr. Cain was personally involved in any of the alleged constitutional violations or that describes a causal connection between Mr. Cain's conduct and any alleged constitutional violation. Indeed, Plaintiff conceded that Mr. Cain was not personally involved in denying Plaintiff's Eighth Amendment rights. ECF 46 at 2. Further, because the Court finds that summary judgment is appropriate on

Plaintiff's claims against Drs. Gulick and Hemphill, there are no underlying constitutional violations for which Mr. Cain could be liable as a supervisor.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF 41) is GRANTED and this case is dismissed.

**IT IS SO ORDERED**.

DATED this 20th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge